FILED by MC D.C.
ELECTRONIC
Mar 3, 2011
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**11-20160-CR-LENARD/TURNOFF**

CASE NO._____
18 U.S.C. § 1349

UNITED STATES OF AMERICA

vs.

MARIKA TOLZ,

        Defendant.
_____/

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Information:

**The United States Trustee Program**

1.    The United States Trustee Program was a component of the United States Department of Justice which was responsible for establishing, maintaining and supervising a panel of qualified individuals to serve as private trustees to administer Chapter 7 (Liquidation) bankruptcy cases under the U.S. Bankruptcy Code, Title 28, United States Code, Section 586(a)(1). To serve on the panel, a person was required to meet qualifications established by the U.S. Attorney General under Title 28, United States Code, Section 586(d) and published in the Code of Federal Regulations at 28 Code of Federal Regulations, Section 58.3. To serve as a trustee, a person was required to undergo an initial background check which was updated every five years. This check included a review of the individual's name, fingerprints, tax return filings with the Internal Revenue Service and a credit report. Each trustee was required to file a bond in favor of the United States.

2.      Pursuant to statute, a trustee was required to collect and reduce to cash, property of the bankruptcy estate and pay these funds to administrative expense claimants and creditors. A trustee was legally required to safeguard all assets, keep detailed and accurate financial records and accounting relating to all funds received and disbursed, and make reports and give appropriate notice to parties of activities occurring in administration of the estates. A trustee was required to deposit estate funds in separate bank accounts for each bankruptcy case and deposit the funds as soon as received. The trustee was also obliged to deposit trustee estate funds at only certain banks that agreed to comply with the United States Trustee's requirements ("Authorized Depositories"). A trustee was required to maintain a log tracking all cash receipts. All disbursements from estate bank accounts had to first be approved by the Bankruptcy Court with specified small dollar exceptions. A trustee was authorized to use certain higher yield accounts for substantial funds that the trustee did not expect to distribute for an extended period such as a Certificate of Deposit (CD) or Treasury Bills.

**Trustee Reporting Requirements**

3.      A panel trustee was required to make written reports to the United States Trustee and Bankruptcy Court as follows:

(A) "TIR" or the Interim Report, was to be provided to the United States Trustee and filed with the Bankruptcy Court at least annually or upon request of the United States Trustee and included a computer generated Cash and Receipts and Disbursements Record (Form 2);

(B) "TFR" or the Final Report, was to be produced and provided to the United States Trustee for review, then filed by the United States Trustee, on behalf of the trustee with the Bankruptcy Court following liquidation and conversion to cash of assets. The "TFR" was to be signed by the trustee under penalty of perjury and certified that the assets had been liquidated and that the funds were

available for distribution. This report included all of the original bank statements for each bank account. After the "TFR" was filed with the Bankruptcy Court and noticed to creditors, the court could consider and enter an order on final fee applications;

(C) "Notice of Final Dividends" was to be filed with the Bankruptcy Court after the "TFR" and was to identify the recipient of a distribution along with the date the trustee prepared and issued the dividend checks, which were only valid for a period of 90 days from the date of preparation; and

(D) "TDR" or Final Account, which was to be submitted to the United States Trustee for review after the checks were issued, all estate funds disbursed and the bank accounts returned with zero balances. It included all the original canceled checks and the remaining original bank statements not previously filed with the "TFR". In this report the trustee would certify that all funds had been disbursed consistent with the "Notice of Final Dividends", that all checks had been negotiated or if not negotiated paid into the registry of the Bankruptcy Court as "unclaimed funds". After review, the United States Trustee would file the "TDR" on behalf of the trustee with the Bankruptcy Court, which if approved, resulted in discharge of the trustee's duties and closing of the case.

4.  As of October 2005, the U.S. Bankruptcy court filing system was known as Case Management - Electronic Case Files or CM-ECF and was utilized by trustees to file the aforementioned reports within the Southern District of Florida. In each filing, the system automatically created a simultaneous duplicate filing which was electronically transmitted to a government server located outside the Southern District of Florida.

## Receivership

5.  A "receiver" was a neutral fiduciary appointed by a court, state or federal, as a provisional remedy provided by statute or under the court's general equity powers, in a variety of

legal circumstances, including civil enforcement actions involving alleged fraud. The receiver represented the appointing court and was the medium through which the court acted. The general role of a receiver included: 1) to hold, manage and operate businesses, real properties, and other forms of income producing assets; and 2) to cause the sale of the assets to realize cash. A receiver's duties and responsibilities were set by the court, and generally specified in the appointing order. Receivers appointed pursuant to the court's equity powers were usually charged with locating, marshaling, and safeguarding assets for ultimate distribution to investors or consumers and determining whether the business for which the receiver was appointed could be operated legally and profitably. The term "receivership" was the legal name given to the situation where a court appointed a receiver.

6. A "personal representative" was a fiduciary under a duty to administer, settle and distribute the estate of a decedent as expeditiously and as efficiently as was consistent with the best interests of the estate and in accordance with the terms of the decedent's will and Florida State Law. A "personal representative" was similar to a bankruptcy trustee under federal law.

**The Defendant and Associated Business Entities**

7. Marika Tolz, Trustee, PA ("MTTPA") was a Florida corporation, which maintained offices located at 1804 Sherman Street, Hollywood, Florida 33020.

8. The defendant **MARIKA TOLZ** was the President, Director and Registered Agent of MTTPA. **TOLZ** also held a State of Florida real estate broker's license and did business as Statewide Realty Corp which maintained the same principal place of business as MTTPA.

9. MTTPA provided services in business analysis, reorganizations, liquidations, case management, expert witness and consulting services. MTTPA had provided services to the Offices of the U.S. Attorney, the U.S. Marshals Service, Internal Revenue Service, Bankruptcy Courts,

4

Federal District Courts and the private sector.

10. **MARIKA TOLZ** was a member of the U.S. Trustee Panel for Chapter 7 Bankruptcy Cases in the United States Bankruptcy Court for the Southern District of Florida for more than 20 years.

11. **MARIKA TOLZ** maintained a bank account titled General Trust and located at Sun American Bank, n/k/a First Citizens Bank & Trust, with account number XXXXXX4401. This General Trust Account was not approved for trustee banking as required by the U.S. Trustee. **TOLZ** used Bank of America, NA for her trustee banking.

### Court Appointments

12. Once appointed, **MARIKA TOLZ** had a fiduciary duty to safeguard and protect all assets deposited into the corresponding fiduciary bank accounts:

    a. **MARIKA TOLZ** was appointed as Trustee for Fuzion Technologies Group, Inc., Case Number 01-28967-BKC-RBR, ("Fuzion") in the United States Bankruptcy Court in the Southern District of Florida on or about March 27, 2002. As Trustee for Fuzion, **TOLZ** opened Bank of America Bank account number XXXXXX0456 ("Fuzion fiduciary account").

    b. **MARIKA TOLZ** was appointed as Trustee for James P. Driscoll, Case Number 06-12420-BKC-JKO, ("Driscoll") in the United States Bankruptcy Court in the Southern District of Florida on or about June 7, 2006. As Trustee for Driscoll, **TOLZ** opened Bank of America account number XXXXXX 0542 ("Driscoll fiduciary account").

    c. **MARIKA TOLZ** was appointed as Receiver for Douglas Centre RB-Gem, LLC., Case Number 08-37393CA11, ("Douglas") by a Judge in the State of Florida's 11th Judicial Circuit for Miami-Dade County Circuit Court on or about December 16, 2008. As the Receiver for

Douglas, **TOLZ** opened Bank of America account number XXXXXX5877 ("Douglas fiduciary account").

      d.      **MARIKA TOLZ** was appointed as Personal Representative for James Christensen Estate, Case Number PRC00000364460J, ("Christensen") by a Judge in the State of Florida's 17th Judicial Circuit for Broward County Circuit Court on or about April 10, 2003. As Personal Representative for Christensen **TOLZ** opened Bank of America account number XXXXXX1919 ("Christensen fiduciary account").

## CONSPIRACY TO COMMIT WIRE FRAUD
## (18 U.S.C. § 1349)

13.    From at least on or about March 24, 2003, through on or about May 20, 2010, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendant,

**MARIKA TOLZ,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate and agree with others, known and unknown to the United States Attorney, to commit certain offenses against the United States, that is, to knowingly and with intent to defraud devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and knowingly transmit and cause to be transmitted certain wire communications in interstate and foreign commerce, for the purpose of executing the scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1343.

## **PURPOSE OF THE CONSPIRACY**

14.    It was the purpose of the conspiracy for **MARIKA TOLZ** and her co-conspirators to misappropriate money from bankruptcy estates, receiverships, and other matters in which **TOLZ** was

appointed as trustee, receiver or personal representative, by writing and causing the writing of unauthorized checks from the fiduciary accounts of those matters containing funds she was safeguarding, without authority or legal justification. Further, it was the purpose of the conspiracy that **TOLZ** would use the misappropriated money for her own personal benefit as well as to conceal her misappropriations by restoring the balance of other fiduciary accounts from which she had taken funds.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendant and her co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

15. Once appointed as a trustee, receiver or personal representative, **MARIKA TOLZ** would establish and maintain separate bank accounts at federally insured banks, into which **TOLZ** would deposit the receipts, revenues, and other assets associated with the specific trusteeship, receivership and probate estates. **TOLZ** would also use the fiduciary accounts to pay any related fiduciary expenses.

16. **MARIKA TOLZ** would use her company, MTTPA, to assist her in carrying out her duties as trustee, receiver or personal representative.

17. Beginning at least by on or about March 24, 2003, **MARIKA TOLZ** began issuing and causing others to issue, from fiduciary bank accounts under her control, unauthorized transfer of funds for deposit into the Marika Tolz General Trust Account at Sun American Bank account number XXXXXX4401.

18. These unauthorized checks included, but were not limited to, the following:

    a.    On or about June 29, 2008, **MARIKA TOLZ** issued and caused others to

issue from the Bank of America Christensen fiduciary account a check in the approximate amount of $500,000 which was deposited into the Marika Tolz General Trust account at Sun American Bank.

  b. On or about March 26, 2009, **MARIKA TOLZ** issued and caused others to issue from the Bank of America Christensen fiduciary account a check in the approximate amount of $305,002 which was deposited into the Bank of America Fuzion fiduciary account.

  c. On or about June 14, 2009, **MARIKA TOLZ** issued and caused others to issue from the Bank of America Douglas fiduciary account a check in the approximate amount of $456,000 which was deposited into the Bank of America Fuzion fiduciary account.

  d. On or about May 13, 2010, **MARIKA TOLZ** issued and caused others to issue from the Bank of America Christiansen fiduciary account a check in the approximate amount of $410,000 which was deposited into the Bank of America Fuzion fiduciary account.

  e. On or about May 20, 2010, **MARIKA TOLZ** caused a $1,000,000 wire transfer from the Bank of America account of Buchanan, Ingersol and Rooney PC into the Sun American Bank Marika Tolz General Trust Account, which funds were earmarked as forfeiture proceeds for the U.S. Marshal's Service in the Scott Rothstein federal criminal case, 09-60331-CR-JIC (Cohn), but were instead used by **TOLZ** to satisfy a previously issued check in the amount of $967,856 and replace monies misappropriated from the Bank of America Driscoll fiduciary account.

19. To conceal her misappropriation of funds from fiduciary accounts under her control, **MARIKA TOLZ** submitted and caused others to submit a false Fuzion Trustee's Final Report with accompanying false Form 2 Estate Cash Receipts And Disbursements Record reflecting a fictitious August 29, 2008 $2,500,000 deposit in the Bank of America Fuzion fiduciary account, which report was electronically filed with the U.S. Bankruptcy Court on December 1, 2008. The report indicated

cash in **TOLZ's** Bank of America Fuzion fiduciary account in the approximate amount of $6,980,507 when in truth and in fact that account contained an ending balance of approximately $4,156,262. A **TOLZ** altered Fuzion fiduciary account statement reflecting the fictitious $2,500,000 deposit accompanied the report.

20. To further conceal that she had misappropriated funds from fiduciary accounts under her control, **MARIKA TOLZ** submitted and caused others to submit a false Driscoll Trustee's Interim Report with accompanying false Form 2 Estate Cash Receipts And Disbursements Record reflecting a $1,000,000 deposit in a nonexistent Bank of America Driscoll fiduciary account number XXXXXX9774, which report was filed electronically with the U.S. Bankruptcy Court on April 28, 2010.

21. From at least on or about March 24, 2003, through on or about May 20, 2010, **MARIKA TOLZ** caused unauthorized checks to be issued from fiduciary accounts under her control and the control of MTTPA employees, and misappropriated at least in excess of approximately $16,000,000 million from matters to which she had been appointed fiduciary, resulting in at least $2.4 million in losses to affected fiduciary matters.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE
## (18 U.S.C. § 981)

1. The General Allegations and the allegations in this Information are realleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **MARIKA TOLZ** has an interest.

2. Upon conviction of the offense charged in this Information, the defendant, **MARIKA TOLZ**, shall forfeit to the United States any property, real and personal, which constitutes or is

derived from proceeds traceable to such violation. The property to be forfeited includes but is not limited to two million, four hundred twenty-one thousand, four hundred ten dollars ($ 2,421,410) in U.S. currency, which represents the proceeds of the fraud.

All pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C) made applicable through 28 U.S.C. § 2461 and the procedures set forth at 21 U.S.C. § 853.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

LUIS M. PEREZ
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| UNITED STATES OF AMERICA | CASE NO. _____ |
|---|---|
| vs. | |
| MARIKA TOLZ, | **CERTIFICATE OF TRIAL ATTORNEY*** |
| Defendant._____/ | **Superseding Case Information:** |

**Court Division**: (Select One)

_X_ Miami ___ Key West
___ FTL  ___ WPB  ___ FTP

New Defendant(s)          Yes ___  No ___
Number of New Defendants  ___
Total number of counts    ___

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:   (Yes or No)   _No_
   List language and/or dialect   _____

4. This case will take  _0_  days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                         (Check only one)
   I    0 to 5 days       _X_        Petty        ___
   II   6 to 10 days      ___        Minor        ___
   III  11 to 20 days     ___        Misdem.      ___
   IV   21 to 60 days     ___        Felony       _X_
   V    61 days and over  ___

6. Has this case been previously filed in this District Court? (Yes or No)  _No_
   If yes:
   Judge: _____   Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?  (Yes or No)  _No_
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____   District of _____

   Is this a potential death penalty case? (Yes or No)   _No_

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?  ___ Yes  _X_ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?  ___ Yes  _X_ No

                                        _____
                                        LUIS M. PEREZ
                                        ASSISTANT UNITED STATES ATTORNEY
                                        FLORIDA BAR NO. 501395

*Penalty Sheet(s) attached                                          REV 4/8/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**   MARIKA TOLZ          **Case No:** _____

Count #:      1

18 U. S. C. § 1349

Conspiracy to Commit Wire Fraud

**\*Max Penalty**:   20 years' imprisonment

Count #:



**\*Max Penalty**:

Count #:



**\*Max Penalty:**

Count #:



**\*Max Penalty:**

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.